IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Liberty Surplus Ins. Corp., | No. C 13-0908 RS |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER** |
| Perma-Pipe, Inc., | |
| Defendant. | |

## I.   INTRODUCTION

In this insurance coverage dispute, plaintiff Liberty Surplus Insurance Company (Liberty) seeks a declaratory judgment against defendant insured Perma-Pipe, Inc., holding that Liberty has the right to appoint and control Perma-Pipe's defense counsel in underlying construction defect litigation and that Liberty has no obligation to pay counsel selected by Perma-Pipe.  Defendant moves to dismiss the suit as an improper anticipatory action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, or in the alternative, to stay it in favor of a related case currently pending in the Northern District of Illinois or to transfer it to that district under 28 U.S.C. §1404(a).  For the reasons discussed below, the motion to transfer is granted and this case shall be transferred to the Northern District of Illinois.

## II.   BACKGROUND

Perma-Pipe, a Delaware corporation with its principal place of business in Niles, Illinois describes itself as the largest manufacturer of pre-insulated piping systems in North America.

Perma-Pipe purchased a commercial general liability insurance policy from Liberty, a New Hampshire corporation with its principal place of business in Massachusetts, providing coverage beginning on November 1, 2007, which it renewed through March 31, 2010. The policy contains a $1,000,000 per occurrence limit and covered risks for Perma-Pipe anywhere in the United States. The policy further provides that Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Compl., Dkt. 1, ¶7 & Ex. A. It states that Liberty "will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* The policy itself was sent to Perma Pipe's Illinois headquarters.

Perma-Pipe manufactured the piping systems for the Mission Bay Utilities and Distribution Phase 1 Project at the University of California San Francisco's Mission Bay campus in San Francisco, California. The Regents of the University of California, owners of the project, brought suit against Perma-Pipe in the Superior Court of California for the County of San Francisco alleging that the piping systems failed in February 2009. A number of additional complaints and cross-complaints (two of which named Perma-Pipe as a defendant) were also filed in response to the alleged pipe failure and the various indemnity and subrogation rights of the relevant parties with respect to it, which have been consolidated in San Francisco Superior Court.

Before any suit was filed, Perma-Pipe notified Liberty of the potential claims against it arising from the Mission Bay Project. On March 11, 2001, Liberty sent a letter to Perma-Pipe responding to those potential claims, estimating that the cost of repairing and replacing the damaged pipes would amount to approximately $50,000,000. Liberty further agreed to defend Perma-Pipe subject to a full reservation of rights. Pursuant thereto, Perma-Pipe hired the counsel of its choice, Illinois lawyers Laurie & Brennan, LLP to defend it in the suits arising out of the Mission Bay Project. Liberty also notified Zurich, its first layer excess insurer (with whom it has a $30 million in follow form excess coverage) of the potential claims against it before they were filed. Liberty additionally has a second layer of excess coverage from a third insurer, RSUI.

After receiving notice of the lawsuits related to the Mission Bay Project and information about damages being sought against Perma-Pipe, Liberty formally agreed on October 8, 2012, that

Perma-Pipe's liability in the underlying suits was covered under its policy and withdrew any and all reservations to deny coverage or decline to continue to defend Perma-Pipe. Having withdrawn its reservations of right, Liberty notified Perma-Pipe that it was exercising its right to defend Perma-Pipe, assigning the California law firm of Archer Norris as defense counsel. Liberty further informed Perma-Pipe that it was terminating Laurie & Brennan.

On October 31, 2012, Perma-Pipe requested that Liberty terminate Archer Norris as its counsel and reappoint Laurie & Brennan as independent, insurer-paid counsel. Perma-Pipe argued that, under Illinois law, despite Liberty's withdrawal of its reservation of right, a serious conflict continued to exist between Liberty and its insured with respect to the selection of defense counsel due to the real possibility of a judgment or settlement against Perma-Pipe greatly in excess of the policy limits. If Liberty did not acquiesce to Perma-Pipe's request within two weeks, Perma-Pipe indicated that it would "take whatever action is necessary to protect its rights and interests. This may include filing a suit seeking to compel Liberty to agree to pay for independent counsel and to recover any associated costs or fees." Declaration of Craig C. Penrose in Support of Motion to Dismiss (Penrose Decl.), Ex. J, Dkt. 11-10.

Nearly three months later, on January 29, 2013, Perma-Pipe followed up on its previous correspondence, again demanding in writing the re-appointment Laurie & Brennan as its defense counsel. Perma-Pipe argued that under Illinois insurance law, failure to do so would amount to bad faith. If Liberty did not accede by February 12, 2013, Perma-Pipe stated it "may have no other choice but to seek all available relief." Penrose Decl., Ex. K, Dkt. 11-11. On February 14, 2013, Liberty informed Perma-Pipe that it had not been "able to complete [its] review" of the most recent letter by the requested date, but would "do so in the next week, and . . . provide a response shortly thereafter." Penrose Decl., Ex. N., Dkt. 11-14. Liberty's response came in the form of this declaratory judgment action, filed on February 28, 2013.

Perma-Pipe subsequently filed an action against Liberty in the Northern District of Illinois on April 17, 2013. That action alleges that Liberty breached its duty to defend Perma-Pipe by refusing to allow Perma-Pipe to choose its independent counsel paid by Liberty. Perma-Pipe

1 continues to retain Laurie & Brennan as its independent counsel, to monitor the underlying actions
2 and to protect its interests in them.

Perma-Pipe moves to dismiss or stay this case under the Declaratory Judgment Act, characterizing it as an improper anticipatory suit. In the alternative, Perma-Pipe requests that the case be transferred to the Northern District of Illinois.

### III. LEGAL STANDARD

#### A. Jurisdiction Under the Declaratory Judgment Act

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (discussing the DJA, 28 U.S.C. §§ 2201-2202). The language of the Act itself is permissive, allowing that Courts "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288.

In *Brillhart v. Excess Insurance Company of America*, the Supreme Court instructed that district courts should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" in deciding whether to "proceed to determine the rights of the parties" under the Act. 316 U.S. 491, 495 (1942). "The *Brillhart* factors remain the philosophic touchstone for the district court." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (discussing *Brillart*, 316 U.S. at 495). They state that "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). The Ninth Circuit has identified additional and potentially relevant considerations such as:

> whether the declaratory action will settle all aspects of the controversy;
> whether the declaratory action will serve a useful purpose in clarifying the

> legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (quoting *Kearns*, 15 F.3d at 155 (Garth, J., concurring)). "[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." *Id.* at 1225.

B.  First-to-File Rule

Additionally, "the well-established 'first-to-file' rule,' . . . allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule "may be invoked when a complaint involving the same parties and issues has already been filed in another district." *Id.* at 625 (internal quotation omitted). It "serves the purpose of promoting judicial efficiency and should not be disregarded lightly." *Church of Scientology of California v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Id.*

"The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628 (internal citations omitted). "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'o Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). "A court may also refuse to apply the first to file rule if the balance of convenience weighs in favor of the later-filed action." *Z-Line Designs*, 218 F.R.D. at 665.

C.  Transfer Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), a district court may also transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice." "To support a motion for transfer the moving party must show: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the

convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992).

## IV.   DISCUSSION

### A.   Jurisdiction Under the Declaratory Judgment Act

Although Perma-Pipe styles its motion as one to dismiss under the Declaratory Judgment Act, all of the arguments it advances are directed solely towards dismissing the case under the first-to-file rule or transferring it under Section 1404(a).  It does not contend that any reason exists, as an initial matter, to decline jurisdiction over this declaratory judgment action.  This case would not require the needless determination of state issues, as both this action and the pending action in Illinois are diversity suits in federal court which require the application of state law and does not create any entanglement between the state and federal systems.  It will settle all aspects of the controversy, will clarify the legal relations at issue between the parties, and is not brought solely for the purpose of procedural fencing.  Although this action is duplicative of the Illinois case, declining jurisdiction over it is not necessary to avoid waste of judicial resources, which can be achieved through staying one case in favor of the other or consolidating them in the same district.  The questions of whether this action was brought for purposes of forum shopping or can be adjudicated in a forum more fair and convenient to the parties are discussed below in the context of whether the action should be transferred.

### B.   First-to-File Rule

The parties agree that this case involves the same parties and issues as the one filed in the Northern District of Illinois, and that, between the two actions, this is the first-filed.  Perma-Pipe argues that despite having the first-filed complaint, Liberty's declaratory judgment action constitutes an improper anticipatory filing and therefore must be dismissed or transferred to the Northern District of Illinois for that reason.  Perma-Pipe first sent a demand letter to Liberty on October 31, 2012, indicating that it "may . . . fil[e] a suit" if Liberty did not retain Perma-Pipe's preferred counsel on its behalf in the Mission Bay cases.  This letter constituted Liberty's "receipt of specific, concrete indications that a suit by [Perma-Pipe] was imminent." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  Although the two-week response deadline in Perma Pipe's

letter came and went without any further action on the author's part, Perma-Pipe subsequently contacted Liberty to indicate its intent to take action to enforce its rights. In the next letter, on January 29, 2013, Perma Pipe again gave Liberty a two-week window to respond, but took no action once the period elapsed. Two days thereafter, Liberty responded to Perma-Pipe requesting more time in which to consider its demand. Perma-Pipe argues that Liberty's request for additional time was a bad-faith effort to "trick" Perma-Pipe into delaying litigation, and that Liberty used the time to file this anticipatory suit in its preferred forum, rather than litigate in Illinois.

Generally, "[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Z-ine Designs*, 218 F.R.D. at 665 (internal quotation omitted). Here, Liberty's counsel lulled Perma-Pipe into believing that it needed time to review Perma-Pipe's letter, consult with its client, and respond to it, presumably through further negotiations. *See* Penrose Decl., Ex. N, Dkt. 11-14. Liberty indicated that it would need more than a week to do so, and it was reasonable for Perma-Pipe to await a response and hold off from filing its suit for the next two weeks. Instead of opening a settlement dialogue, Liberty filed its suit in this court on February 28, 2013, two weeks after asking for more time. Such conduct triggers the exception to the first to file rule. *See Xoxide v. Ford*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006). The fact that Perma-Pipe allowed the deadlines set by its letters to Liberty to pass is not inconsistent with this result. *See Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1138 (Fed. Cir. 1995) (upholding district court judgment dismissing case under first-to-file rule where "months passed" after the deadline for a response given in defendant's letter threatening suit and plaintiff's filing of anticipatory declaratory action). "[W]here as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." *Z-Line Designs*, 218 F.R.D. at 667.

C. Transfer Under 28 U.S.C. § 1404(a)

Perma-Pipe has demonstrated that venue in this case is proper in the Northern District of Illinois. Neither party is located in the Northern District of California. Liberty is a New Hampshire corporation with its principal place of business in Massachusetts. The case concerns the contractual

duties of Liberty under an insurance policy it issued and delivered to Perma-Pipe, an Illinois company, in Illinois. *Sorensen v. Daimler Chrysler AG*, No. 02-4752, 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003). Perma-Pipe's witnesses regarding the negotiation of the insurance policy are located in the Northern District of Illinois. Additionally, transfer of this case to that district will allow for the conservation of judicial resources, because it can there be consolidated with Perma-Pipe's suit against Liberty.

V. CONCLUSION

Although Liberty's case is the first-filed, Perma-Pipe has shown that concerns over the anticipatory nature of this suit overcome that consideration and counsel in favor of transferring the action to the Northern District of Illinois. The motion is granted and the case shall be transferred forthwith to that judicial district.

IT IS SO ORDERED.

Dated: 8/26/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE